Thomas G. McKeon Formal Opinion Counsel No. 2004-F1 New York State Liquor Authority 11 Park Place New York, New York 10007
Dear Mr. McKeon:
You have requested an opinion as to the types of retail alcoholic beverage sales that are now permitted in the town of Spencer, a "dry" town in which no retail sales were permitted whatsoever, following a recent vote pursuant to Alcoholic Beverage Control ("ABC") Law § 141. This section permits a town to hold a referendum to allow the voters of the town to determine whether the town will allow the sale of alcohol within its boundaries.See ABC Law § 141. It also specifies the language to be submitted to the voters in such a referendum. See id. No license may be issued contrary to such vote. See id. § 141(3).
Pursuant to this provision, the voters of the town of Spencer considered whether to allow the sale of alcohol within the town's boundaries in the election of November 2003. They were presented with the following questions on the ballot:
 Question 1. Selling alcoholic beverages to be consumed on the premises where sold. Shall any person be authorized to sell alcoholic beverages at retail to be consumed on premises licensed pursuant to the provisions of section sixty-four of this chapter [relating to sale by restaurants and catering establishments]?
 Question 2. Selling alcoholic beverages to be consumed on the premises where sold. Shall any person be authorized to sell alcoholic beverages at retail to be consumed on premises licensed pursuant to the provisions of section sixty-four-a of this chapter [relating to sale by taverns]?
 Question 3. Selling alcoholic beverages not to be consumed on the premises where sold. Shall any person be authorized to sell alcoholic beverages at retail not to be consumed on the premises where sold in [Spencer]?
 Question 4. Selling alcoholic beverages by hotel keepers only. Shall any person be authorized to sell alcoholic beverages at retail to be consumed on the premises where sold but only in connection with the business of keeping a hotel [in Spencer], if the majority of the votes cast on the first question submitted are in the negative?
 Question 5. Selling alcoholic beverages by summer hotel keepers only. Shall any person be authorized to sell alcoholic beverages at retail to be consumed on the premises where sold but only in connection with the business of keeping a summer hotel within the period from May first to October thirty-first, in [Spencer], if the majority of the votes cast on the first question submitted are in the negative?
ABC Law § 141(1).
We understand that the results of the vote in Spencer were as follows: on questions 1 (retail sale for on-premises consumption at a restaurant), 4 (retail sale for on-premises consumption at a hotel), and 5 (retail sale for on-premises consumption at a summer hotel), a majority of the voters voted against allowing such sales; and on question 3 (retail sale for off-premises consumption), a majority of the voters voted in favor of allowing such sales. On question 2, regarding the sale of alcoholic beverages at taverns, the number of votes in favor of and against such sales was equal. The county board of elections certified these results and requested the assistance of the State Liquor Authority in determining the legal impact of the tie vote. You have requested an opinion of this office as to what kinds of licenses may now be issued within the town of Spencer. We conclude that licenses for the retail sale of alcoholic beverages for off-premises consumption and licenses for the retail sale by taverns for on-premises consumption, as provided for in ABC Law § 64-a, may be issued within the town of Spencer.
Analysis
Initially, we note that the results of the November vote as certified by the county board of elections are clear with respect to the retail sale of alcoholic beverages for on-premises consumption by restaurants, hotels, summer hotels, and for off — premises consumption — each of these measures passed or failed by a majority of votes. The results of the vote determine the type of license that may be issued by the Liquor Authority. See ABC Law § 141(3); see also 1961 Op. Att'y Gen. (Inf.) 8, 9 ("It is to be noted that the type of question voted upon . . ., `Shall any person be authorized . . .', is equivalent to a question phrased in the following manner[,] `Shall a license be issued to any person . . .'."). Thus, we conclude that licenses may be issued for the retail sale of alcoholic beverages for off-premises consumption, while licenses for the retail sale of alcoholic beverages for on-premises consumption by restaurants, as provided by ABC Law § 64, hotels,[1] and summer hotels, may not be issued.
Remaining at issue here is whether the retail sale by taverns[2] was approved or rejected by the voters when the number of votes for approval and rejection were equal. We believe that, in light of the text of section 141(3), the tie vote resulted in approval of the measure; that is, retail sale of alcoholic beverages by a tavern is now permitted in Spencer.
Section 141 provides that "[i]f a majority of the votes cast shall be in the negative on all or any of the questions, no person shall, after such election, sell alcoholic beverages in such town contrary to such vote or to the provisions of this chapter . . . ." Id. § 141(3) (emphasis added). Here, there was not a majority of votes in the negative; thus, we believe that the sale as provided in question number 2 is not prohibited.
Our conclusion is supported by the language of ABC Law § 141(4). This subsection provides that if the number of votes cast on the question of sales by restaurants for on-premises consumption is "equal or a majority . . . in the affirmative," then a restaurant licensee is authorized to sell alcoholic beverages for off-premises consumption, even if a majority of the votes cast on the question of sales for off-premises consumption is "in the negative."[3] ABC Law § 141(4). This subsection makes clear that a measure passes if there is either a majority of affirmative votes or an equal number of affirmative and negative votes.
We recognize that this result is inconsistent with the manner in which a tie vote on other ballot proposals would be interpreted. In the other instances of which we are aware, a majority of affirmative votes is required for a referendum to pass. See, e.g., Municipal Home Rule Law §§ 23(1) (local law subject to mandatory referendum); 24(1)(a) (same for referendum on petition); County Law § 101(2) (same for resolution of county board of supervisors subject to permissive referendum); General Municipal Law § 350(2) (resolution of village board of trustees authorizing construction of airport subject to referendum on petition); Town Law §§ 11 and 12 (town board's resolution to change position of town receiver of taxes and assessment from elected to appointed position subject to referendum on petition); Village Law § 19-1900 (proposition for dissolution of village). In fact, we are aware of no other statute that requires a majority of negative votes to defeat a referendum proposal, and in which a tie vote has the same effect as a majority of affirmative votes.
This was not always the case under the statutes governing "local option" — that is, the ability of the residents of a town to determine whether they would permit the sale of alcoholic beverages within the town. New York's local option law dates back at least to 1896. Chapter 112 of the Laws of 1896 enacted section 16 of the Liquor Tax Law. Section 16 provided that town residents could vote on proposals to permit the sale of alcoholic beverages within the town, and "if the majority of the votes shall be in the negative" on any of the questions, no liquor license could be obtained for that type of sale. L. 1896, ch. 112, § 16. This provision was amended in 1900 to provide that "if the majority of the votes shall be in the negative or if the number of votes castfor and against shall be equal" on any of the questions, then that type of sale would be prohibited within the town. L. 1900, ch. 367, § 3 (emphasis added). We have been unable to determine why this language, providing that a tie vote would defeat the proposal, was added, but the language remained through numerous amendments to the local option provisions until the State repealed the Liquor Tax Law in 1921 to comply with federal requirements under Prohibition. L. 1921, ch. 155, § 2 (repealing the Liquor Tax Law).
Upon the modification of the restraints of Prohibition in 1933,[4] New York enacted the Alcoholic Beverage Control Law, which again provided for local option. L. 1933, ch. 180. Unlike the law repealed in 1921, the local option provisions of the 1933 law provided only that "[i]f a majority of the votes cast shall be in the negative," then that type of sale would be prohibited within the town. Id. § 111. The statute included no language whatsoever addressing the effect of a tie vote. Indeed, none of the competing bills before the Legislature at the time of the provision's enactment did so; each one contained the same relevant "local option" language. Compare Laws 1933, ch. 180, enacting 1933 N.Y. Senate Bill No. 1983, § 111, with 1933 N.Y. Senate Bill No. 1714, § 120 and 1933 N.Y. Assembly Bill No. 2126, § 120; seealso 4th Report of Comm'n on Alcoholic Beverage Control Legislation, 1933 N.Y. Legis. Doc. No. 87, at 40-41 (bill proposed by Commission included same "majority" language). This "majority" language has been included in the local option law without change since 1933.
We think it reasonable to believe that the Legislature that enacted the 1933 Alcoholic Beverage Control Law was familiar with the former Liquor Tax Law. Indeed, one possibility under consideration at the time was to enact new legislation similar to the old Liquor Tax Law. See W.A. Warn, "Liquor Topic Rules Session at Albany," N.Y. Times, Jan. 15, 1933, at N1-2 ("Reinstatement of [the Liquor Tax Law] was advocated by a prominent wet who participated in the drafting of [the Liquor Tax Law] and is prepared to make this recommendation to the [Commission on Alcoholic Beverage Control Legislation]."). Furthermore, the Commission on Alcoholic Beverage Control Legislation reported that it had "familiarized itself with various systems at one time or another adopted in this country and elsewhere for the control of alcoholic beverages." See 1st Report of Comm'n on Alcoholic Beverage Control Legislation, 1933 N.Y. Legis. Doc. No. 62, at 6. Presumably, this included New York's own former system. Finally, the sponsor of the bill that was enacted as the Alcoholic Beverage Control Law, John J. Dunnigan, had been a member of the Senate during several years in which the Legislature had amended the local option provisions of the Liquor Tax Law.[5] For all of these reasons, it is reasonable to assume that the Legislature was aware of the language of the local option voting provisions under the Liquor Tax Law and intentionally adopted language providing that a majority of negative votes would be required to defeat a proposal to allow the sale of alcohol within the town. Moreover, the Legislature again had the opportunity to adopt language providing that a tie vote would lead to the defeat of such a proposal when it re- enacted the Alcoholic Beverage Control Law after the repeal of Prohibition in 1934, and did not. L. 1934, ch. 478, § 141.
Finding nothing in the legislative history of section 141 to indicate that the Legislature intended otherwise, we are persuaded that, reading the plain language of section 141, the vote in the town of Spencer for which an equal number of affirmative and negative votes were counted resulted in passage of that proposal. Therefore, we conclude that the voters of Spencer have approved the retail sale of alcoholic beverages at taverns for on-premises consumption. Because the other types of retail sale for on-premises consumption were rejected by majority vote, with respect to on-premises consumption, the Liquor Authority may only issue tavern licenses to eligible applicants within Spencer.
Very truly yours,
ELIOT SPITZER
Attorney General
[1] "Hotel" is a term defined in the ABC Law. See ABC Law § 3(14). We have been informed that many of what are considered hotels in everyday language actually obtain tavern licenses rather than "hotel" licenses. "Restaurant" is also defined in the ABC Law.See id. § 3(27). We use these terms as defined in the ABC Law.
[2] "Tavern" is not a term defined in the ABC Law, but, we have been informed, is a shorthand term used to describe the type of license issued pursuant to ABC Law § 64-a.
[3] We note that ABC Law § 141(4) appears to contain an incorrect reference to "question number two," where it should refer to "question number three." Section 141(4) dates back to 1934, when the list of questions to be presented to the voters included the first question, relating to sales for on-premises consumption, and the second question, relating to sales for off — premises consumption. See L. 1934, ch. 478, § 141(1). At that time, section 141(4) referred to "question number one" and "question number two." Id. In 1964, a new question was added to the list of questions as the second question, and the former "question number two" became the third question in the list. L. 1964, ch. 531, § 19. Subsection 4 was not, however, simultaneously amended, nor has it since been amended to reflect the change in the list of questions.
[4] The National Prohibition Act, enacted in 1919 to implement the 18th Amendment, was amended in 1933 to allow the manufacture and sale of beer. 48 Stat. 17 (1933). New York's initial enactment of the Alcoholic Beverage Control Law thus regulated only beer as allowed under federal law. L. 1933, ch. 180. Later in 1933, the 21st Amendment repealed Prohibition. 48 Stat. 1749 (1933). In 1934, after the repeal of Prohibition, New York re-enacted the Alcoholic Beverage Control Law, to control the manufacture, sale, and distribution of "alcoholic beverages." L. 1934, ch. 478, § 2.
[5] Dunnigan also was a member in 1917, when the Legislature enacted Chapter 624, providing for local option by cities, using "majority" language identical to that in the statute allowing local option for towns. See L. 1917, ch. 624, § 15.